UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIANNIS ANTETOKOUNMPO,<br><br>      *Plaintiff*,<br><br>-v-<br><br>DEVERE HATCHETT, EDIKAN EKANEM, GEOFF STREHLOW, JOE PAGE, AND CHARLES ASCENCIO,<br>      *Defendants.* | Civil Case No.: 1:21-cv-06114-PKC<br>Hon. P. Kevin Castel<br><br>ECF Case<br>Electronically Filed<br><br>**DECLARATION OF ANASTASI PARDALIS IN SUPPORT OF THE MOTION FOR DEFAULT JUDGEMENT** |

I, ANASTASI PARDALIS, declare:

 1. I am a member of the Bar of this Court, and I am a partner of the law firm PARDALIS & NOHAVICKA, LLP, counsel for Plaintiff GIANNIS ANTETOKOUNMPO ("Plaintiff") in the above-entitled action. As such, and from a review of the file maintained by my office, I am familiar with all the facts and circumstances in this action. I respectfully submit this declaration in support of Plaintiff's Motion for Default Judgement against Defendant EDIKAN EKANEM ("Ekanem" or "Defendant") based on my personal knowledge.

 2. This action was brought against Defendants alleging, *inter alia*, claims for false designation of origin and false endorsement in violation of 15 U.S.C. § 1125, deceptive acts and practices under New York General Business Law (N.Y. Gen. Bus.) § 349, common law unfair competition, unjust enrichment, tortious interference with prospective economic advantage, conspiracy and concert of action, and violation of Plaintiff's right of publicity (N.Y. Civ. Rights Law § 50-51).

1

3. Jurisdiction of the subject matter of this action involves a federal question. The Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §1331 and 1338(a).

## Procedural Background

4. This action commenced on July 16, 2021, by the filing of the Complaint, the Civil Cover Sheet, AO 120 Form Trademark and the Proposed Summons. (Docket Nos. 1-3, 6).

5. A copy of the Summons and Complaint was served upon Defendant Ekanem, on August 11, 2021, by substituted service at Defendant's place of residence and by mailing a copy to Defendant's residence. (Docket No. 31)

6. On August 27, 2021, Plaintiff filed an affidavit of service to the Court of the Summons and the Complaint. *See*, Docket No. 31; Annexed hereto as **Exhibit 3** is a true and accurate copy of the Complaint.

7. Defendant has not answered or otherwise moved with respect to the Complaint, and the time for this Defendant to answer or otherwise move has not been extended.

8. Upon information and belief, and as it appears from facts in this litigation, Ekanem is not infant, mentally incompetent, or presently in the military service of the United States.

9. On September 21, 2021, upon Plaintiff's application, the Clerk of this Court entered a Certificate of Default as to Ekanem. *See,* Docket No. 36; Annexed hereto as **Exhibit 5** is a copy of the Clerk's Certificate of Default.

## Factual Background

10. Defendant Ekanem placed Antetokounmpo's GREEK FREAK mark on products (the "Infringing Products") and offered these Infringing Products for sale on Instagram, https://instagram.com and Edikan Shop (https://www.edikanshop.com/). Antetokounmpo never authorized Defendant to use or otherwise commercially exploit his name and celebrity persona.

11. Plaintiff never authorized Defendant to design, advertise, sell and distribute products bearing his name, the GREEK FREAK mark, or likeness. Antetokounmpo is a world-wide famous, extremely successful, and popular basketball player. Antetokounmpo is identified by his nickname the "Greek Freak". He won the NBA Most Valuable Player Award (MVP) two years in a row, for years 2019 and 2020. He also won the NBA Defensive Player of the Year Award for 2020. Plaintiff is the NBA Champion for 2021. He has millions of fans, and he is currently one of the most well-known basketball players in the world. Aside from his basketball career, Plaintiff has been using his name and brand in commerce in the United States and worldwide; products bearing his name, nickname, likeness, and trademarks ("Antetokounmpo Rights") are distributed at stores and markets throughout the United States. The Antetokounmpo Rights have been the subject of licenses granted by Antetokounmpo to third parties to use and exploit such rights on or in connection with various goods and services, including clothing, and various other items and merchandise. Plaintiff has expended substantial time, money, and resources to successfully develop, promote, and advertise the Antetokounmpo Rights throughout the world, such that they are now a source-identifying brand.

12. Antetokounmpo holds a trademark-like interest in his name, nickname, likeness, and persona. Further, he has been using his nickname, Greek Freak, as a trademark in U.S. commerce (the "GREEK FREAK mark"); Antetokounmpo's products are distributed under the GREEK FREAK mark at stores and markets throughout the United States. Antetokounmpo has registered the "GREEK FREAK" mark with the United States Patent and Trademark Office (USPTO). Antetokounmpo's U.S. trademark registration for the GREEK FREAK mark covers "Backpacks" in International Class 18 and "Shirts, t-shirts, sweatshirts, hooded sweatshirts, jackets, hooded jackets, sports jerseys, socks, warm up suits, caps, hats" in International Class 25 (Registration

No. 5401870).

13. The Antetokounmpo Rights have been the subject of licenses granted by Antetokounmpo to third parties to use and exploit such rights on or in connection with various goods and services, including clothing, and various other items and merchandise. Plaintiff has expended substantial time, money, and resources to successfully develop, promote, and advertise the Antetokounmpo Rights throughout the world, such that they are now a source-identifying brand. In 2020, Antetokounmpo has received approximately twenty-eight million dollars from endorsement deals.

14. On June 11, 2021, Plaintiff, through his attorneys, sent a Cease and Desist letter to Defendant, alerting him of Plaintiff's exclusive rights in his name and likeness and requesting an accounting of all profits generated. Annexed hereto as **Exhibit 1** is a true and accurate copy of Plaintiff's Cease and Desist letter dated June 10, 2021. On June 16, 2021, Defendant responded to Plaintiff's letter. Annexed hereto as **Exhibit 2** is a true and accurate copy of the communications between Ekanem and Plaintiff's counsel. However, Ekanem failed to provide any evidence showing the cessation of his infringing activities. Furthermore, Defendant failed to cooperate with Plaintiff in good faith to reach an agreement that would ensure that the infringement has ceased, and Plaintiff is reasonably compensated for the damage incurred.

15. Defendant EDIKAN EKANEM was properly served. A copy of the proof of service was filed on August 27, 2021. Annexed hereto as **Exhibit 4** is a true copy of the affidavit of service. However, Defendant failed to file an answer or otherwise respond to Plaintiff's complaint. It is well settled law that a default judgment is "ordinarily justified where a Defendant fails to respond to the complaint." See *Fermin v. Las Delicias Peruanas Restaurant, Inc, et al*, 93 F. Stupp.3 d 19,

4

30 (E.D.N.Y. 2015) (internal citation omitted). In such situations, the Courts consider whether Defendant had notice of the action and an opportunity to defend against the allegations. *Id*.

### Defaulting Defendant was properly served

16. Rule 4(e) of the Federal Rules of Civil Procedure mandates that an individual may be served in a judicial district of the United States by, *inter alia*, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Service of process in New York is, in turn, governed by C.P.L.R. Rule 308. In sum, an individual may be served by: (1) personal service; (2) delivery to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mail; (3) service on an agent; or (4) so-called "nail and mail" service. However, CPLR 308(5) allows for service "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." In this instant action, the Defendant was properly served under Rule 4 of the Federal Rules of Civil Procedure on August 11, 2021, by substituted personal service to his residence and by mailing a copy of the summons and complaint.

### Factors Applicable to a Motion for Default Judgement

17. A default constitutes an admission of all well-pled factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, 06–CV–1878, 2007 WL 2891016, at *2 (E.D.N.Y.2007). A default judgment entered on the well-pled allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, 05–CV–0064, 2005 WL 2476264, at *3 (E.D.N.Y.2005). The only question remaining, then, is whether Plaintiff has provided adequate

support for the relief it seeks. *First Mercury Ins. Co. Inc. v. Schnabel Roofing of Long Island, Inc.*, No. 10-CV-4398 JS AKT, 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).

18. To ascertain whether to grant a default judgment, a Court must be guided by the same factors that apply to a motion to set aside entry of a default. *Id*. Firstly, the Courts must consider whether the default was willful. See *Fermin citing Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir.2010). These factors are: (1) whether the default was willful; (2) whether ignoring the default would prejudice the adversary; and (3) whether a meritorious defense is presented. *Id*.

19. Failure of the Defendant to respond to the complaint successfully establishes willfulness as has happened in the instant action. Secondly, the Courts consider whether ignoring default would prejudice the opposing party. *See Fermin* citing *Swarna*. The Plaintiff's efforts in prosecuting his claim and the Defendant's failure to respond to the complaint are sufficient to show that ignoring the default would prejudice the Plaintiff. This is more so because there are no further steps to be taken to obtain relief from the Court. *See Flanagan v. N. Star Concrete Constr., Inc*, 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, 2008 WL 55560868, at *2 (S.D.N.Y Oct. 27, 2008)). Thirdly, the Court considers whether meritorious defense has been established by the Defendants. See *Fermin* citing *Swarna*. Where a Defendant fails to answer the complaint, courts are unable to make a determination whether the Defendant has a meritorious defense to the Plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment. See *Joseph v. HDMJ Rest., Inc.*, 970 F.Supp.2d 131, 148 (E.D.N.Y.2013). Once all factors are satisfied, an issuance of default judgment was considered proper by the Court.

20. All well-pleaded factual allegations in a complaint are considered as an admission in case of a default. Further, the allegations pertaining to a liability are deemed true. See *Joe Hand*

*Promotions, Inc. v. El Norteno Rest. Corp.*, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc v. E.L.U.L. Realty Group*., 973 F.2d 155, 158 (2d Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993)).

### **Court Should Accept the Evidence**

21. Courts may not be required to conduct a hearing where there is a foundation for the damages laid out in the default judgment. Rule 55 of the Federal Rules of Civil Procedure (FRCP) allows the Court to conduct hearings to determine damages, however, such hearing is not mandatory. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.* 699 F.3d 230, 234 (2d Cir. 2012). District judges have discretion in determining whether it is "necessary and proper" to hold an inquest on damages. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir.1993).

### **Plaintiff Is Entitled to Damages, Attorney's Fees and Costs, and Equitable Relief**

22. Defendant used Plaintiff's GREEK FREAK mark in connection with goods, since Defendant placed them "in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto… and the goods are sold or transported in commerce" and in connection with services "when [the mark] is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.

23. Defendant Ekanem placed Antetokounmpo's GREEK FREAK mark on apparel and offered these products for sale on Instagram, https://instagram.com and Edikan Shop (https://www.edikanshop.com/). *See*, **Exhibit 1.** Antetokounmpo never authorized Defendants to use or otherwise commercially exploit his GREEK FREAK mark and celebrity persona.

24. However, it is clear that Defendant displayed Plaintiff's GREEK FREAK mark in his e-shop and placed them on the infringing products in bad faith. In weighing a defendant's bad

faith, the concern is, "whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482 –483 (2d Cir. 1996) (quotation omitted). Defendant attempts to receive the benefit of goodwill in the Plaintiff's name and likeness that Plaintiff has incurred significant expenses, spent considerable personal work and time building over many years, despite never having performed any work for Plaintiff. It is sufficient that a reasonable person, upon viewing the Plaintiff's GREEK FREAK mark on Defendant's products, would believe that Plaintiff sponsors or approves Defendant's use of his GREEK FREAK mark. *See, e.g., Jackson*, 9 F. Supp. 3d at 355-6. Furthermore, Defendant's use of the Plaintiff's GREEK FREAK mark is certain to cause confusion in the marketplace and to consumers who falsely can assume that Plaintiff and Defendant are associated and/or that Defendant is licensed to use the Plaintiff's GREEK FREAK mark. The likelihood of consumer confusion is extremely high, and all elements of a claim for false designation of origin are met.

25. It is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 256 (2d Cir. 2014). "[M]any courts in [the Second Circuit] treat a default as evidence of willfulness for the purposes of determining statutory damages." See *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F.Supp.2d 150, 157 (E.D.N.Y.2010). Given Defendant's default and the strength of Plaintiff's GREEK FREAK mark, it is respectfully submitted that Defendant's infringement is willful, thereby entitling Plaintiff to enhanced statutory damages cap. *See*, *Mun. Credit Union* at 295. Specifically, Defendant's intent to trade on Plaintiff's goodwill is demonstrated from his failure to

take affirmative steps to ensure that her conduct would not constitute infringement, such as answering to Plaintiff's complaint or otherwise defending himself and cooperating with Plaintiff. Taking the undisputed facts in the complaint as true suffices to establish defendant's liability under the Lanham Act.

26. The right of publicity in New York is derived from Sections 50 and 51 of the state's Civil Rights Law. *A.V.E.LA.,* 131 F. Supp. 3d at 205 citing *Abakporo v. Sahara Reporters,* No. 10 Civ. 3256(RJD)(VVP), 2011 WL 4460547, at *5 (E.D.N.Y. Sept. 26, 2011). To state a right of publicity claim in New York, the plaintiff must prove that the defendant "(i) used his name, portrait, picture, or voice, (ii) for advertising or trade purposes, (iii) without his written consent." *Id*. citing *Burck v. Mars, Inc,* 571 F.Supp.2d 446, 451 (internal citation omitted); *see also Jackson v. Odenat,* 9 F.Supp.3d 342, 353 (S.D.N.Y.2014). Because the plaintiff must generally have developed a property interest with financial value in order to prove that he suffered damages, the right is most frequently invoked by public figures or celebrities. *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 134 (2d Cir. 1984) citing *Estate of Presley v. Russen,* 513 F.Supp. 1339 (D.N.J.1981).

27. Here, Plaintiff has satisfied the elements for a violation of the New York privacy statute, since Defendant misappropriated Plaintiff's likeness and name for trade purposes without Plaintiff's consent. Plaintiff is a famous athlete and exploits the value of his persona, likeness, and name and therefore, has developed a property interest in the subject matter of the alleged infringement. Given Plaintiff's popularity, Defendant deliberately exploited plaintiff's fame and goodwill.

### **III. Monetary Damages.**

28. Plaintiff is entitled to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action for the violation of 15 U.S.C.A. § 1125 (a)(1)(A) under 15

U.S.C.A. § 1117 (a). "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C.A. § 1117 (a). Defendant did not cooperate with Plaintiff. Moreover, Plaintiff's damages are based on "the market value of the license fee that [the Beastie Boys] were entitled to charge for their endorsement." *Beastie Boys v. Monster Energy Co.,* 66 F. Supp. 3d 424, 465 (S.D.N.Y. 2014) (internal quotation marks omitted).

29. Section 51 of N.Y. Civil Rights Law provides for both injunctive relief and compensatory damages. A plaintiff can seek an injunction against the use of his or her identity, likeness and name, and can recover monetary damages to compensate for the harm caused by the unauthorized uses. The damage award primarily compensates for emotional distress. *See Garis v. Uncut-RawTV, Inc.,* No. CV 06-5031 ADS AKT, 2011 WL 4404035, at *3 (E.D.N.Y. July 5, 2011), *report and recommendation adopted sub nom. Garis v. Uncut-RawTV*, No. 06-CV-5031 ADS AKT, 2011 WL 4404032 (E.D.N.Y. Sept. 21, 2011). "A plaintiff should receive damages for mental stress and for injury to her property interest inherent and intricately woven in her personality." *Id.* quoting *Marano v. Aaboe*, No. 05–9375, 2010 WL 6350785, at *7 (S.D.N.Y. Oct.20, 2010*), adopted by* 2011 WL 1157553 (S.D.N.Y. March 28, 2011).

30. Plaintiff seeks to recover only his attorney's fees and costs.

### IV. Attorney's Fees and Permanent Injunction.

31. Plaintiff is also entitled to his attorney's fees and costs. Award of attorney fees to prevailing party in trademark infringement suit under Lanham Act is within the discretion of the district court, determined on case-by-case basis, and is reserved for "exceptional" cases, with no presumption that cases involving willful infringement are necessarily exceptional. *4 Pillar Dynasty LLC* at 215. An "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC*

*v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014). District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Id*. As in the comparable context of the Copyright Act, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.' " *Id*. Quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The standard of *Octane Fitness* for an award of attorney's fees applies also to cases brought under the Lanham Act. *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 206 (2d Cir. 2019).

32. The factual record supports a finding of Defendant's willfulness to profit illegally from Plaintiff's goodwill and bad faith to avoid the legal consequences of the infringing activities, thereby warranting an award of attorney's fees. See, e.g. *Merck Eprova AG v. Gnosis S.p.A*., 901 F. Supp. 2d 436, 461 (S.D.N.Y. 2012), aff'd, 760 F.3d 247 (2d Cir. 2014).

33. It is respectfully submitted that the instant case is exceptional warranting the award of Plaintiff's legal fees and costs. Defendant has defaulted and done so willfully by refusing to participate in the litigation or cooperate with Plaintiff following the receipt of the respective Cease-and-Desist letter. As a result of Defendant's conduct, Plaintiff has been deprived of discovery, and thus he is not able to present a sufficient measure of damages. If the Court decides not to award legal costs, Defendants will have been able to engage in infringing conduct while avoiding payment of any damages by purposefully defaulting. This Court has awarded Antetokounmpo's legal fees and prejudgment interest by holding that without awarding attorney's fees, the result would not be just or equitable because Defendants' conduct is the conduct that should be deterred. *See*, Default Judgment of Honorable Judge Jesse M. Furman, *Antetokounmpo v. Deanne Debaca Finney*, 1:20-CV-07260. The Court also approved the rates of Plaintiff's counsel. See, Report and

Recommendations of Honorable Judge Robert W. Lehburger, *Antetokounmpo v. Paleo Productions LLC at al.*, 1:20-CV-6224; Report and Recommendations of Honorable Judge Katharine H. Parker, *Antetokounmpo v. Kenneth Searcy d/b/a NoMercy50 d/b/a MusicArtHistory*, 1:20-CV-5055.

34. It is respectfully submitted that like the other Plaintiff's actions against his infringers, this is also an exceptional case justifying the award of attorney's fees and prejudgment interest, and thus, this Court should exercise its discretion in Plaintiff's favor. Not only did Defendant willfully infringe upon Plaintiff's intellectual property rights with intent to capitalize on Plaintiff's goodwill, but also, they unreasonably refused to cooperate with Plaintiff or appear in the instant action and defend themselves. Moreover, particular circumstances advancing considerations and deterrence are present. Plaintiff could have avoided the legal fees and costs associated with the instant lawsuit, had Defendant cooperated with Plaintiff and ceased their infringing activities upon receipt of Plaintiff's cease and desist letter.

35. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983)). The hourly rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. (1984). "In determining what a reasonable hourly rate is, the court should not only consider the rates approved in other cases in the District but should also consider any evidence offered by the parties. The Court is also free to rely on its own familiarity with prevailing rates in the District." *Noble v. Crazetees.com*, No. 13-cv-5086 (PAE) (HBP), 2015 WL 5697780, at *9 (S.D.N.Y. Sept.

28, 2015) (citations omitted). The "fee applicant has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (internal quotation marks omitted). The next issue is the reasonableness of the hours spent on the litigation. *Bass v. Diversity Inc. Media*, No. 19-CV-2261 (AJN), 2020 WL 2765093, at *1 (S.D.N.Y. May 28, 2020).

36. The Third Circuit developed another method of calculating "reasonable" attorney's fees. This method, known as the "lodestar" approach, involved two steps. First, the court was to calculate the "lodestar," determined by multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved. *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (CA3 1973). Second, using the lodestar figure as a starting point, the court could then make adjustments to this figure, in light of "(1) the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation; and (2) the quality of the work performed as evidenced by the work observed, the complexity of the issues and the recovery obtained." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S. Ct. 3088, 3097, 92 L. Ed. 2d 439 (1986), *supplemented,* 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987) (internal citation omitted). The Second Circuit emphasized in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), that the figure resulting from this calculation is more than a mere "rough guess" or initial approximation of the final award to be made. Instead, the Second Circuit found that "[w]hen ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled. *Id.***,** at 897, 104 S.Ct.,

at 1548. A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a "reasonable" fee is wholly consistent with the rationale behind the usual fee-shifting statute. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, at 565.

37. The majority of the work in this case was performed by myself, Anastasi Pardalis, a partner at PARDALIS & NOHAVICKA, LLP. (A true and accurate copy of PN's contemporaneous time records for this matter is annexed hereto as **Exhibit 6**.)

38. My hourly rate is $350.

39. The billing rates of Plaintiff's counsel have been approved by this Court on multiple occasions. See *Legantis et al v. Ethos Gallery 51, LLC et al. (S.D.N.Y.) 1:16-cv-08198- GHW*. The requested fees correspond to prevailing market rates for cases of the same nature regarding the enforcement of Plaintiff's intellectual property rights. See, e.g. *Bass v. Diversity Inc. Media*, No. 19-CV-2261 (AJN), 2020 WL 2765093, at *1 (S.D.N.Y. May 28, 2020). The number of hours that PN worked are reasonable in virtue of the complexity of the instant case.

40. I, Anastasi Pardalis graduated from Queens College and New York Law School, and have approximately (15) years of experience practicing within the Southern and Eastern Districts of New York as well as in the New York State court system. I am responsible for managing many of the firm's commercial litigation cases (including breach of contract cases, partnership/joint venture disputes, class actions, business torts, civil RICO claims, breach of fiduciary duty allegations, and shareholder issues), trademark infringement cases, entertainment, music, fashion and licensing, personal injury, medical malpractice, real estate and labor employment cases (including wage and hour, discrimination/sexual harassment, family and medical leave, E.R.I.S.A., restrictive covenants, and whistleblower actions) from the commencement of litigation up until trial and/or settlement. I have acted as lead counsel representing both employers and employees in

a vast array of matters before federal and state courts, as well as, federal and state agencies, including the NLRB, the EEOC, the OSHA, the NYS Division of Human Rights, the NYC Commission of Human Rights, and the NY Department of Labor.

41. PN's hourly rate is in line with the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation of Anastasi Pardalis and PN. Based on our firm's extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, it is respectfully submitted that our legal fees are reasonable.

42. Plaintiff respectfully requests that the Court grant his reasonable attorney's fees and costs associated with Defendant Ekanem. Exhibit 6 describes in detail the time that Anastasi Pardalis spent working on the instant matter.

43. Finally, Plaintiff is entitled to a permanent injunction following the default judgment. It is respectfully submitted that balancing the equites and examining the public interest, the Court should enjoin Defendant from placing Plaintiff's likeness, name or Greek Freak nickname on his products for sale or advertising his products through the use of Plaintiff's name and likeness thereby warranting such an equitable relief.

## CONCLUSION

44. For the reasons stated above and in the accompanying exhibits and Plaintiff's Memorandum in support of the Plaintiff's motion for default judgment against Defendant Ekanem, the Plaintiff's motion should be granted in its entirety together with such another and further relief that this Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York

December 30, 2021

                              **PARDALIS & NOHAVICKA, LLP**

                              By:   /s/ Anastasi Pardalis  
                                        Anastasi Pardalis  
                                        *Attorneys for Plaintiff*  
                                        950 Third Avenue, 27th Floor  
                                        New York, NY 10022  
                                        Tel.: 212-213-8511  
                                        Fax: 718-777-0599  
                                        taso@pnlawyers.com