UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIANNIS ANTETOKOUNMPO,<br><br>     *Plaintiff*,<br><br>   -v-<br><br>DEVERE HATCHETT, EDIKAN EKANEM, GEOFF STREHLOW, JOE PAGE, AND CHARLES ASCENCIO,<br><br>     *Defendants*. | Civil Case No.: 1:21-cv-06114-PKC<br>Hon. P. Kevin Castel<br><br>ECF Case<br>Electronically Filed<br><br>**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

### **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT**

Anastasi Pardalis, Esq.
Pardalis & Nohavicka, LLP
*Attorneys for Plaintiff*
950 3rd Avenue, 27th Floor
New York, NY 10022
taso@pnlawyers.com

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..............................................................................................5

**RELEVANT FACTUAL BACKGROUND** ..........................................................................6

**PROCEDURAL BACKGROUND** ........................................................................................8

**ARGUMENT** ...........................................................................................................................8

**A. L**EGAL **S**TANDARD FOR A **D**EFAULT **J**UDGMENT UNDER **R**ULE 55 ............................................ 8
**B. T**HE **F**ACTUAL **A**LLEGATIONS, **S**UPPORTING **D**ECLARATIONS AND **E**XHIBITS **E**STABLISH **T**RADEMARK **I**NFRINGEMENT AND **D**EFENDANT'S **L**IABILITY ON **A**LL **C**OUNTS OF THE **C**OMPLAINT ...............................................................................................................................10
**C. C**OMPUTATION OF **P**LAINTIFF'S **S**TATUTORY **D**AMAGES. ....................................15
**D. P**LAINTIFF IS **E**NTITLED TO **P**RE-**J**UDGMENT **I**NTEREST ........................................17
**E. P**LAINTIFF IS **E**NTITLED TO **A**TTORNEYS' **F**EES AND **C**OSTS .................................18
**F. P**LAINTIFF IS ENTITLED TO A **P**ERMANENT **I**NJUNCTION. ......................................19

**CONCLUSION** ..................................................................................................................... 20

Cases

*1–800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir.2005) ....................................10
*4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2019) ........................17,18
*Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir.1990) ..............17
*Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) ................................................................................................................................ 10
*Bleecker v. Zetian Sys., Inc.*, No. 12-cv-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) .................................................................................................................................9
*Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008) ....................................................11
*C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013) ........................20
*Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482 –483 (2d Cir. 1996) ..........................14
*Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors Inc.*, 699 F3d 230, 234 (2dCir.2012)....................................................................................................................... 10
*Century 21 Real Estate LLC v. Paramount Home Sales, Inc.*, No. 06–cv–2861, 2007 WL 2403397, at *5 (E.D.N.Y. Aug. 20, 2007) ................................................................... 16
*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) .........................9
*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ........................10
*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) ................................................................................................................................ 19
*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) .............. 18
*Harris v. Fairweather*, No. 11 Civ. 2152, 2012 WL 3956801, at *9 (S.D.N.Y. Sept. 10, 2012) . 19
*Jackson v. Odenat*, 9 F. Supp. 3d 342, 354-55 (S.D.N.Y. 2014) ...................................11,12,13,14
*Lobo Enters., Inc. v. Tunnel Inc.*, 822 F.2d 331, 333 (2d Cir.1987) ..........................................20
*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873 (2d Cir. 1986) .............13
*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) ................................................................................................................................ 11
*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) ....................12
*Malletier v. Artex Creative Int'l Corp.*, 687 F.Supp.2d 347, 357 (S.D.N.Y.2010) ........................16
*Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 256 (2d Cir. 2014) ..........................................14
*Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290 (E.D.N.Y. 2015). …........*passim*
*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ..................................................................9
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014) ................................................................................................. 17,18
*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.1961)…………………………...12,13
*Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.*, No. 97 Civ. 4824, 1999 WL 33740332, at *5 (S.D.N.Y. April 19, 1999) ................................................................................................ 16
*Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F.Supp.2d 150, 157 (E.D.N.Y.2010) ...........14,15
*S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013). .....................................................................9
*Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004) .......................................................11
*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997)................................................................................................ 10
*Trustees of the Sheet Metal Workers' Intl. Assn. Local Union No. 28 Benefit Funds v Maximum Metal Manufacturers, Inc.*, 14-CV-2890 (JLC), 2015 WL 8031380, at *2 (S.D.N.Y. Dec. 7, 2015) ................................................................................................................................ 10

*Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 113–14 (2d Cir.2001) ....................................... 15
*Zhen Ming Chen v. Y Café Ave B Inc.*, 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019) ......... 9

Statutes

15 U.S.C. § 1125(a) ................................................................................................................. 11
15 U.S.C. § 1125(a)(1)(A) ........................................................................................................ 11
15 U.S.C. § 1127 ...................................................................................................................... 12
15 U.S.C. 1114 ......................................................................................................................... 11
15 U.S.C.A. § 1117 .............................................................................................................. 6, 15
26 U.S.C. § 6621(a)(2) ............................................................................................................... 6
Fed. R. Civ. P. 54(c) .................................................................................................................. 9
Fed. R. Civ. P. 55 ...................................................................................................................... 9
Fed. R. Civ. P. 55 (b)(2) ............................................................................................................. 5
Fed. R. Civ. P. 55(a) .................................................................................................................. 9
Fed. R. Civ. P. 8(b)(6) ............................................................................................................... 9
Local Rule 55.2(c) ..................................................................................................................... 5

# PRELIMINARY STATEMENT

Plaintiff, GIANNIS ANTETOKOUNMPO ("Antetokounmpo" or "Plaintiff"), respectfully submits this Memorandum of Law in support of his Motion for Default Judgement pursuant to Fed. R. Civ. P. 55 (b)(2) and Local Rule 55.2 against Defendant EDIKAN EKANEM, ("Ekanem" or "Defendant").

Antetokounmpo brought this action for the infringement of his GREEK FREAK registered trademark by Defendant through the unauthorized use of the GREEK FREAK mark, including, without limitation, by advertising, marketing, promoting, distributing, displaying, offering for sale and selling unlicensed infringing products bearing the GREEK FREAK mark.

Antetokounmpo is widely identified by his nickname the "Greek Freak". Further, he has been using his nickname, Greek Freak, as a trademark in U.S. commerce (the "GREEK FREAK mark"); Antetokounmpo's products are distributed under the GREEK FREAK mark at stores and markets throughout the United States. Antetokounmpo has registered the "GREEK FREAK" mark with the United States Patent and Trademark Office (USPTO).

Antetokounmpo has expended substantial time, money and resources in successfully developing, promoting and advertising his GREEK FREAK-branded products. Through his efforts, and as a result of Antetokounmpo's continuous and extensive use of his GREEK FREAK mark, Antetokounmpo's GREEK FREAK mark has become famous, and exclusively associated with Antetokounmpo and Antetokounmpo's products. For the reasons set forth herein, the Plaintiff requests that the Court grant Plaintiff the following relief:

A) Statutory Damages – Plaintiff should be awarded statutory damages that will be determined by the Court pursuant to 15 US Code § 1117;

B) Pre-judgment Interest at the rate set forth in 26 U.S.C. § 6621(a)(2).

C) Plaintiff's Attorneys' Fees and Costs.

D) Injunctive Relief preventing Defendant from using Plaintiff's GREEK FREAK and GREEK FR34K marks.

E) Such other and further relief as the Court deems just and proper.

## RELEVANT FECTUAL BACKGROUND

Antetokounmpo has continually used his GREEK FREAK mark in connection with his products in U.S. commerce at least as early as 2017. He has been identified as the "GREEK FREAK" prior to and throughout his professional career, due to his impressive athletic abilities and achievements. During all the relevant times, Plaintiff has engaged in substantial advertising and promotion, and has expended substantial time, money and resources successfully developing and promoting the GREEK FREAK mark and brand. Plaintiff has also entered into licensing and other similar agreements with third parties, for the authorized use of the GREEK FREAK mark in commerce in connection with a variety of goods. The GREEK FREAK products are directly associated with Antetokounmpo as he is recognized as the "Greek Freak", and they distinguish themselves among competitive products based on their association with Antetokounmpo and their superior design and quality.

In addition to continuous and uninterrupted use in commerce, Antetokounmpo has applied for, and obtained, a federal registration for his GREEK FREAK mark. Antetokounmpo's U.S. trademark registration for the GREEK FREAK mark covers "Backpacks" in International Class 18 and "Shirts, t-shirts, sweatshirts, hooded sweatshirts, jackets, hooded jackets, sports jerseys, socks, warm up suits, caps, hats" in International Class 25 (Registration No. 5401870). Antetokounmpo has also applied for a variation of his GREEK FREAK mark, namely for the mark

"GREEK FR34K" which includes the numbers appearing on his NBA jersey. This mark has been approved for registration and no third-party oppositions have been filed against it; it is anticipated that it will be registered with USPTO. This mark also covers apparel and related items, among others.

Defendant has advertised and sold products, namely apparel bearing the GREEK FREAK marks through various online platforms, and websites including Instagram, https://instagram.com and Edikan Shop (https://www.edikanshop.com/). Plaintiff never authorized Defendant to design, advertise, sell and distribute products bearing the GREEK FREAK and GREEK FR34K marks. The products offered by Defendant bearing the GREEK FREAK and GREEK FR34K marks are of a particular aesthetic not aligned with Plaintiff and of a substantially lower quality than the products offered by Plaintiff or his licensees. Defendant's actions have diluted Plaintiff's marks.

On June 11, 2021, Plaintiff, through his attorneys, sent a Cease and Desist letter to Defendant, alerting him of Plaintiff's exclusive rights in the marks and requesting an accounting of all profits generated. On June 16, 2021 Defendant responded, acknowledging selling the infringing items. On June 19, 2021, Defendant responded further admitting his role in selling the infringing items to a number of vendors. On June 21, 2021 Defendant agreed to settle the matter for the sum of $4,500 USD and Plaintiff sent Defendant the settlement paperwork on June 22, 2021. Defendant has ceased communicating with Plaintiff regarding settlement and has not settled the matter. Defendant has engaged in this infringing activity despite having constructive notice of Antetokounmpo's federal trademark rights under 15 U.S.C. §1072 and despite having actual knowledge of Antetokounmpo's use of the GREEK FREAK mark by virtue of Plaintiff's Cease and Desist letter. Defendant failed to cooperate with Plaintiff demonstrating Defendant's bad faith intent to profit from Plaintiff's success, by misleading, confusing and deceiving consumers.

There is no question that the products sold by Defendant under the GREEK FREAK and GREEK FR34K marks were sold by Defendant with the purpose of confusing and misleading consumers into believing that they are purchasing products associated with or endorsed by Giannis Antetokounmpo, one of the most successful and popular NBA players. Defendant therefore traded off the goodwill and reputation of Antetokounmpo by engaging in the unauthorized use of Antetokounmpo's trademark.

## PROCEDURAL BACKGROUND

The action was commenced on July 16, 2021, by the filing of the Summons and Complaint on Defendants DEVERE HATCHETT, EDIKAN EKANEM, GEOFF STREHLOW, JOE PAGE and CHARLES ASCENCIO. *See* **Exhibit A**, a true and accurate copy of the Summons and the Complaint.

On August 11, 2021, Plaintiff served the Summons and the Complaint to Defendant by delivering a true copy of each at Defendant's place of residence. *See* **Exhibit B**, a true copy of the affidavit of service of the Summons and the Complaint.

Upon Plaintiff's application, on September 21, 2021, the Clerk of the Court issued a Certificate of Default against the Defendant EDIKAN EKANEM on the grounds that Defendant failed to appear, answer the Complaint or otherwise defend himself. *See* **Exhibit C**, a true copy of the Certificate of Default.

## ARGUMENT

**A. Legal Standard for a Default Judgement under Rule 55.**

Fed R. Civ. P. 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New*

*York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Fed. R. Civ. P. 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default. The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).

Fed. R. Civ. P. 54(c) states, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128.

On a default judgment motion, the defendant is deemed to have admitted all of the well-pleaded factual allegations contained in the complaint. Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013). However, "because a party in default does not admit conclusions of law," it is incumbent upon the Court to consider whether the plaintiff has pleaded facts sufficient to establish the defendant's liability with respect to each cause of action. See *Zhen Ming Chen v. Y Café Ave B Inc.*, 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019). When determining liability from default, the non-defaulting party is entitled to all reasonable inferences from the evidence offered. *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290 (E.D.N.Y. 2015).

"Once liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks." *Bleecker v. Zetian Sys., Inc.*, No. 12-cv-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatlantic*

*Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (internal citations omitted). "Establishing the appropriate amount of damages involves two steps: (1) 'determining the proper rule for calculating damages on ... a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Credit Lyonnais*, 183 F.3d at 155). "[A] hearing is not required where a sufficient basis on which to make a calculation exists." *Trustees of the Sheet Metal Workers' Intl. Assn. Local Union No. 28 Benefit Funds v Maximum Metal Manufacturers, Inc.*, 14-CV-2890 (JLC), 2015 WL 8031380, at *2 (S.D.N.Y. Dec. 7, 2015); *see also, Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors Inc.*, 699 F3d 230, 234 (2d Cir. 2012).

**B. The Factual Allegations, Supporting Declarations and Exhibits Establish Trademark Infringement and Defendant's Liability on All Counts of the Complaint**

To succeed in establishing liability for infringement under the Lanham Act, a plaintiff must prove that he owns a valid protectable trademark; that the defendant used the trademark in commerce and without consent; and that there was a likelihood of consumer confusion. See 1–*800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir.2005).

The Lanham Act holds liable any person who, without consent, uses another's mark in commerce in connection with its services in a way to cause confusion, mistake or to deceive. 15 U.S.C. 1114. Section 43(a) of the Lanham Act proscribes "false designation of origin" by the use

of a name, word or symbol in connection with goods or services. 15 U.S.C. § 1125(a). Specifically, any person who uses any word, name or symbol in commerce in a manner that is likely to cause confusion or to, "deceive as to the affiliation, connection or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities" shall be liable in a civil action. *Id*. (emphasis added).

The elements of a false endorsement under section 43(a)(1)(A) are, "that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to origin, sponsorship, or approval of the goods or services." *Jackson v. Odenat*, 9 F. Supp. 3d 342, 354-55 (S.D.N.Y. 2014), reconsideration denied (June 12, 2014) (citing *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008)). Thus, in addition to showing that it has a valid mark, the plaintiff must show that the defendant's use of its mark is likely to cause, "an appreciable number of ordinarily prudent purchasers" "confusion as to the origin, sponsorship, or approval" of defendant's products or services. *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) (citing *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004) (*quotation omitted*); 15 U.S.C. § 1125(a)(1)(A)). Plaintiff has established *prima facie* satisfaction of the requisite elements; it is uncontroverted that plaintiff owns a federally registered mark and a mark that is approved and will soon be registered with USPTO, and that defendant used identical marks without Plaintiff's consent. Likelihood of consumer confusion is typically examined by reference to the so-called *Polaroid* factors. See, *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015).

A mark is used in commerce in connection with goods, "when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed

thereto… and the goods are sold or transported in commerce" and in connection with services "when [the mark] is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. Here, Defendant has placed Plaintiff's trademark on the products that he offers for sale, advertised and promoted the same products online using Plaintiff's GREEK FREAK and GREEK FR34K marks thereby creating the false impression that Plaintiff and Defendant are affiliated and/or act in concert with each other and/or Plaintiff endorses Defendant's products and services.

In assessing the likelihood of confusion, the Courts in the Second Circuit generally apply the eight-factor test laid out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) (the "Polaroid factors"). The Polaroid factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Id*. "No single factor is dispositive, nor is a court limited to consideration of only these factors." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) (internal quotation marks omitted).

Courts often adjust the factors when dealing with false endorsement claims; for instance, in such cases, the quality of the products and "bridging the gap" are often not considered. *Jackson v. Odenat*, 9 F. Supp. 3d 342, 355-56 (S.D.N.Y. 2014), *reconsideration denied* (June 12, 2014). Under a "false endorsement" allegation, the "public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Id*. at 205 (emphasis added).

The first factor – strength of the mark – weighs in favor of the Plaintiff. The Plaintiff's marks are world-famous. The Plaintiff has spent large sums of money advertising and promoting the GREEK FREAK and GREEK FR34K marks and the associated products and services globally. Plaintiff has continuously devoted substantial amounts of time and money to develop and protect the goodwill associated with his name and the GREEK FREAK and GREEK FR34K marks. As a result of Plaintiff's efforts, the Plaintiff's name and the GREEK FREAK and GREEK FR34K marks have become strong, famous, and well-known in the United States and around the world for online digital content and various products and services, including in the nature of communications and advertising products that are offered to consumers, advertisements and content publication.

The second factor – similarity of the marks –likewise weighs in Plaintiff's favor. Where marks are "essentially identical [,]" the second factor of the Polaroid analysis weighs in favor of the plaintiff. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873 (2d Cir. 1986). In such a case, consumers are likely, "to believe that [defendant] somehow is associated with [plaintiff] or at least has consented to the use of its trademark." *Id*. The marks that Defendant is displaying is Plaintiff's exact marks.

As stated, courts do not generally consider the quality of products or "bridging the gap" in false endorsement claims. *Jackson*, 9 F. Supp. 3d at 355-56. Further, because Defendant intentionally failed to cooperate with Plaintiff following his Cease and Desist Letter or answer the Complaint or otherwise appear in this action discovery never opened, no surveys of actual confusion have been conducted.

However, it is clear that Defendant displayed Plaintiff's marks in its e-shop and placed it on his products in bad faith. In weighing a defendant's bad faith, the concern is, "whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and

13
[Title]

goodwill and any confusion between his and the senior user's product." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482 –483 (2d Cir. 1996) (quotation omitted). Defendant attempts to receive the benefit of goodwill in the Plaintiff's marks that Plaintiff has incurred significant expenses, spent considerable personal work and time building over many years, despite never having performed any work for Plaintiff. Though the above factors weigh in Plaintiff's favor, it is sufficient that a reasonable person, upon viewing the mark on Defendant's products, would believe that Plaintiff sponsors or approves Defendant's use of its trademark. *Jackson*, 9 F. Supp. 3d at 355 56. Furthermore, Defendant's use of the Plaintiff's Mark is certain to cause confusion in the marketplace and to consumers who falsely can assume that Plaintiff and Defendant are associated and/or that Defendant is licensed to use the Plaintiff's Marks. The likelihood of consumer confusion is extremely high, and all elements of trademark infringement are met.

It is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 256 (2d Cir. 2014). "[M]any courts in [the Second Circuit] treat a default as evidence of willfulness for the purposes of determining statutory damages." See *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F.Supp.2d 150, 157 (E.D.N.Y.2010). Given Defendant's default and the strength of Plaintiff's marks, it is respectfully submitted that Defendant's infringement is willful, thereby entitling Plaintiff to enhanced statutory damages cap. See, *Mun. Credit Union* at 295. Specifically, Defendant's intent to trade on Plaintiff's goodwill is demonstrated from his failure to take affirmative steps to ensure that his conduct would not constitute infringement, such as answering

to Plaintiff's complaint or otherwise defending himself, or even withdrawing the infringing products before the filing of the instant lawsuit and cooperating with Plaintiff.

   **C. Computation of Plaintiff's Statutory Damages.**

15 U.S.C.A § 1117 provides the following:

In a case involving the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per types of goods or services sold, offered for sale, distributed, as the court considers just.

Statutory damage awards should be both compensatory and significant enough to discourage future wrongful conduct by the individual defendant and other potential would-be infringers. *Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 113–14 (2d Cir.2001). Although a statutory damage award may "exceed actual damages, an award of statutory damages [should] not constitute a windfall for prevailing plaintiffs." *Rolls–Royce PLC*, 688 F.Supp.2d at 157. If the amount of actual damages is uncertain (to the extent it is taken into account), courts may make reasonable assumptions in calculating statutory damages. See *Century 21 Real Estate LLC v. Paramount Home Sales, Inc.*, No. 06–cv–2861, 2007 WL 2403397, at *5 (E.D.N.Y. Aug. 20, 2007) (applying a statutory damages formula that was "speculative" but nonetheless "reasonable

and appropriate"). Statutory damages have also a punitive aspect. *Mun. Credit Union* at 297. Because an award of actual damages under § 35(a) can be trebled in a case of willful infringement, it has been called an "unadventurous corollary" of that statutory trebling provision to do the same thing in statutory damages cases, in order to give effect to the punitive aspect of statutory damages. *Id.* (citing *Malletier v. Artex Creative Int'l Corp.*, 687 F.Supp.2d 347, 357 (S.D.N.Y.2010)).

Here, Defendant's willful infringement entitles plaintiff to an award up to $2,000,000. Nevertheless, "the pertinent considerations in deciding the amount of such an award encompass both the degree of the defendant's culpability and the extent of the injury caused." *Mun. Credit Union* at 297 (quoting *Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.*, No. 97 Civ. 4824, 1999 WL 33740332, at *5 (S.D.N.Y. April 19, 1999). Relevant factors include "the profits reaped and the expenses saved by the infringer, the revenues lost by the plaintiff, the value of the [mark], the need to deter potential infringers, the degree of willfulness or the innocence of the defendant, the defendant's cooperativeness in providing information relevant to proof of profits and losses, and the need to deter the defendant from future misconduct." *Id.* In the instant matter, Defendant failed to cooperate with Plaintiff. Defendant's instant default was deliberate, willful and inexcusable, thereby depriving Plaintiff from meaning discovery and access to information relevant to Defendant's revenues. Moreover, given the strength and value of the mark, there is a need for Plaintiff to deter potential infringers and also deter Defendant from future misconduct. It is uncertain when Defendant started and ceased selling the infringing products.

The computation of Plaintiff's statutory damages requires some imagination. Defendant sold apparel bearing Plaintiff's GREEK FREEK and GREEK FR34K marks as demonstrated in Exhibit C to Plaintiff's complaint. The price of certain pieces of apparel is between $110.00-$130.00. Assuming that Defendant sold at least one hundred pieces having gross profits of at least

16
[Title]

$13,000.00. After taking into consideration the relevant factors, especially Defendant's willfulness to infringe upon Plaintiff's mark, it is respectfully submitted that the Court should grant treble statutory damages to Plaintiff of at least $39,000. Generally speaking, an award of an infringer's profits under the Lanham Act can be expected to refer to net profits, but the infringer bears the burden to prove any deductions for its costs from the gross revenues attributable to its infringement. *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2019). While "speculative" to a degree, these assumptions are "reasonable and appropriate" under the circumstances. See, *Mun. Credit Union* at 298.

### D. Plaintiff is Entitled to Pre-Judgement Interest

"Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional' cases." *Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir.1990). An "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014). District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Id*. As in the comparable context of the Copyright Act, " '[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.' " *Id*. Quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The standard of *Octane Fitness* for an award of attorney's fees and pre-judgment interest applies also to cases brought under the Lanham Act. *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 206 (2d Cir. 2019).

Here, the factual record supports a finding of Defendant's willfulness to profit illegally from Plaintiff's goodwill and bad faith to avoid the legal consequences of the infringing activities, thereby warranting an award of pre-judgment interest at the rate set forth in 26 U.S.C. § 6621(a)(2). See, e.g. *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 461 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014).

### E. Plaintiff is Entitled to Attorney's Fees and Costs

*Octane Fitness* provides district courts with broad discretion to award attorney's fees. *4 Pillar Dynasty LLC* at 216. Award of attorney fees to prevailing party in trademark infringement suit under Lanham Act is within the discretion of the district court, determined on case-by-case basis, and is reserved for "exceptional" cases, with no presumption that cases involving willful infringement are necessarily exceptional. *4 Pillar Dynasty LLC* at 215. Courts may consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. quoting *Octane Fitness* at 554 n.6, 134 S.Ct. 1749.

It is respectfully submitted that in the instant matter the Court should exercise its discretion in Plaintiff's favor. Not only did Defendant willfully infringed upon Plaintiff's intellectual property rights with intent to capitalize on Plaintiff's goodwill, but also, he unreasonably refused to cooperate with Plaintiff or appear in the instant action and defend himself. Moreover, particular circumstances advancing considerations and deterrence are present. Plaintiff could have avoided the legal fees and costs associated with the instant lawsuit, had Defendant cooperated with Plaintiff and ceased his infringing activities upon receipt of Plaintiff's cease and desist letter. To date, Plaintiff has expended $6,682.41 in legal fees and costs.

### F. Plaintiff is entitled to a Permanent Injunction

18
[Title]

To obtain a permanent injunction, plaintiff must satisfy a four factor test, demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

A court may grant a permanent injunction following a default judgment so long as the moving party shows that "it meets the prerequisites for issuance of an injunction." *Mun. Credit Union* at 299, quoting *Harris v. Fairweather*, No. 11 Civ. 2152, 2012 WL 3956801, at *9 (S.D.N.Y. Sept. 10, 2012). Specifically, plaintiff "must demonstrate (1) actual success on the merits and (2) irreparable harm." *Id*. Plaintiff has established success on the merits due to defendants' default. *Id*.

Irreparable harm is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused." *Mun. Credit Union* at 299, quoting *Lobo Enters., Inc. v. Tunnel Inc.*, 822 F.2d 331, 333 (2d Cir.1987). Consumer confusion is presumed in cases where an identical mark is at issue. *Mun. Credit Union* at 299, quoting *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013). Plaintiff is therefore entitled to permanent injunctive relief.

Moreover, while damages partially compensate Antetokounmpo for his injuries, Defendant will likely infringe again upon Plaintiff's mark, thereby perpetuating consumer confusion and dilution of Plaintiff's marks. The damages award, because it is based only on speculative Defendant's sales does not fully compensate Plaintiff. Accordingly, it is respectfully submitted that balancing the equites and examining the public interest, the Court should enjoin Defendant

from placing Plaintiff's marks on its products for sale or advertising its products through the use of Plaintiff's marks. Therefore, the equitable relief is appropriate.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court grant Plaintiff's Motion the relief requested and award Plaintiff statutory damages in the amount of at least $39,000 together with prejudgment interest, Plaintiff's attorney's fees and costs in the amount of at least $6,682.41 and grant Plaintiff a permanent injunction to preclude Defendant from using Plaintiff's GREEK FREAK and GREEK FR34K marks, and such other and further relief that this Court deems just and proper.

Dated: New York, New York
December 30, 2021 **PARDALIS & NOHAVICKA, LLP**

**PARDALIS & NOHAVICKA, LLP**

By: /s/ Anastasi Pardalis
Anastasi Pardalis
*Attorneys for Plaintiff*
950 Third Avenue, 27th Floor
New York, NY 10022
Tel.: 212-213-8511
Fax: 718-777-0599
taso@pnlawyers.com